UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CAROLINA HATTON, individually and
his natural guardian, C.H., a minor,

        Plaintiff,

vs.                     Case No.  2:12-cv-186-FtM-29SPC

CHRYSLER CANADA, INC.,

        Defendant.
_____

**OPINION AND ORDER**

This matter comes before the Court on Chrysler Canada, Inc.'s Motion to Dismiss Plaintiff's Second Amended Complaint for Lack of Personal Jurisdiction and as Falling Outside the Statute of Limitations and Incorporated Memorandum of Law (Doc. #40) filed on August 22, 2012.  Plaintiffs filed a response on September 5, 2012. (Doc. #45.)  With leave of Court (Doc. #54), defendant filed a response in support of its motion (Doc. #55) to which plaintiffs filed a sur-reply (Doc. #56).  For the reasons set forth below, the motion is denied.

**I.**

The Second Amended Complaint alleges that on or about January 2, 2009, Christopher Sheldon was driving a 1999 Chrysler 300 M in which plaintiff Carolina Hatton was a restrained rear seat passenger.  The vehicle was involved in an accident on Interstate 75 in Lee County, Florida.  At the time of the impact, several components of the 1999 Chrysler M failed, causing severe injury to

Carolina Hatton.  As a result, Carolina Hatton and her minor son, C.H., initiated this action against Chrysler Canada, Inc. asserting causes of action for negligence (Count I) and strict products liability (Count II).  Chrysler Canada, Inc. is alleged to have manufactured the Chrysler 300 M vehicle.

This matter was removed from state court on the basis of diversity jurisdiction.  In its motion to dismiss for lack of personal jurisdiction, defendant asserts that the Florida Long-Arm Statute does not apply to this case and that exercising personal jurisdiction does not comport with Constitutional Due Process.  In the alternative, defendant asserts that the plaintiffs' claims are barred by the applicable statute of limitations. Plaintiffs argue to the contrary.

## II.

"Jurisdiction to resolve cases on the merits requires both authority over the category of claim in suit (subject-matter jurisdiction) and authority over the parties (personal jurisdiction), so that the court's decision will bind them" Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 577 (1999); see also Sinchem Int'l Co. Ltd. v. Malay. Int'l Shipping Corp., 549 U.S. 422, 430-31 (2007).  The Court previously found that it has subject matter jurisdiction based upon complete diversity of citizenship. (Doc. #59.)

Personal jurisdiction is a restriction on judicial power as a matter of individual liberty, and "a party may insist that the limitation be observed, or he may forgo that right, effectively consenting to the court's exercise of adjudicatory authority." Ruhrgas AG, 526 U.S. at 584. Unless waived or forfeited[1], personal jurisdiction is "an essential element of the jurisdiction of a district court, without which the court is powerless to proceed to an adjudication."  Id. at 584 (citation and internal quotation marks omitted).

The existence of personal jurisdiction is a question of law. Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc., 593 F.3d 1242, 1257 (11th Cir. 2010); Oldfield v. Pueblo De Bahia Lora, S.A., 558 F.3d 1210, 1217 (11th Cir. 2009).  "A federal district court in Florida may exercise personal jurisdiction over a nonresident defendant to the same extent that a Florida court may, so long as the exercise is consistent with federal due process requirements." Licciardello v. Lovelady, 544 F.3d 1280, 1283 (11th Cir. 2008).

Plaintiff "bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." United Techs. Corp. v. Mazer, 556 F.3d 1260, 1274 (11th Cir. 2009).  A prima facie case is established if plaintiff

---

[1]Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 703-04 (1982).

alleges enough facts to withstand a motion for directed verdict or judgment as a matter of law. PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V., 598 F.3d 802, 810 (11th Cir. 2010); SEC v. Carrillo, 115 F.3d 1540, 1542 (11th Cir. 1997). If defendant challenges jurisdiction by submitting affidavit evidence making a specific factual denial based on personal knowledge, the burden shifts back to the plaintiff to produce evidence supporting jurisdiction. Mazer, 556 F.3d at 1274. Plaintiff bears the ultimate burden of establishing that personal jurisdiction is present. Oldfield, 558 F.3d at 1217. "Where the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff." Meier v. Sun Int'l Hotels, Ltd., 288 F.3d 1264, 1269 (11th Cir. 2002). "If such inferences are sufficient to defeat a motion for judgment as a matter of law, the court must rule for the plaintiff, finding that jurisdiction exists." PVC Windoors, 598 F.3d at 810.

"A federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution. When a federal court uses a state long-arm statute, because the extent of the statute is governed by state law, the federal court is required to construe it as would the state's supreme court." Diamond

Crystal Brands, 593 F.3d at 1257-58 (internal citations and quotation marks omitted).  The Court must determine the first step before proceeding to the second.  PVC Windoors, 598 F.3d at 807-08.

The reach of the Florida long arm statute is a question of Florida law.  Mazer, 556 F.3d at 1274.  "A Florida court conducts a two-step inquiry when determining whether jurisdiction under Florida's long-arm statute is proper in a given case.  Initially, it must determine whether the complaint alleges jurisdictional facts sufficient to invoke the statute.  If so, the court must then examine whether the defendant has sufficient 'minimum contacts' with Florida in order to satisfy due process requirements."  Canale v. Rubin, 20 So. 3d 463, 465 (Fla. 2d DCA 2009) (citing Execu-Tech Bus. Sys., Inc. v. New Oji Paper Co., 752 So. 2d 582, 584 (Fla. 2000)).  The due process analysis itself involves a two-part inquiry in which the Court first considers whether defendant engaged in minimum contacts with the state of Florida, then considers whether the exercise of personal jurisdiction over defendant would offend traditional notions of fair play and substantial justice.  Madara v. Hall, 916 F.2d 1510, 1515-16 (11th Cir. 1990).

**III.**

**A. Florida Long Arm Statute**

**(1)  General Jurisdiction**

Florida's long-arm statute provides in part: "[a] defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity."  Fla. Stat. § 48.193(2).  "The reach of this provision extends to the limits on personal jurisdiction imposed by the Due Process Clause of the Fourteenth Amendment."  Fraser v. Smith, 594 F.3d 842, 846 (11th Cir. 2010).  "In order to establish that [defendant] was engaged in substantial and not isolated activity in Florida, the activities of [defendant] must be considered collectively and show a general course of business activity in the State for pecuniary benefit."  Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino, 447 F.3d 1357, 1361 (11th Cir. 2006)(quoting Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 627 (11th Cir. 1996)).

The Second Amended Complaint alleges that Chrysler Canada is a Canadian corporation which has submitted itself to the jurisdiction of the court by "[e]ngaging in substantial and not isolated activity within the State of Florida."  (Doc. #37, ¶23d.) Prior paragraphs assert that Chrysler Canada transacted business in Florida (id. ¶4), ships thousands of vehicles it manufactures to

Florida every year (id. ¶5), manufactured every 300 M sold and used in Florida (id. ¶7), manufactured and assembled the subject vehicle in Canada (id. ¶9), derived billions of dollars in monetary benefit from the sale of its vehicles in Florida and continues to derive significant gain from the sale of its vehicles in Florida (id. ¶10), and maintained business contacts and activity with Florida Chrysler dealers, including warranty coverage in Florida (id. ¶13).

Chrysler Canada asserts that it is not engaged in substantial and not isolated activity within the State of Florida.  In support, defendant provides the affidavit of Edward R. Masse (Doc. #40-1) in which he states the following:

Defendant Chrysler Canada is an indirect wholly owned subsidiary of Chrysler Group LLC.[2]  Defendant's principal place of business is in Canada, not in Florida, and defendant has never been licensed to do business in Florida.  Defendant does not rent or lease property within the State of Florida.  Chrysler Canada sells all assembled vehicles to Chrysler United States while the vehicle is still in Canada, and Chrysler United States takes possession of all of the assembled vehicles in Canada.  Chrysler Canada has no

_____

[2]In particular, he attests that Chrysler Canada is currently an indirect wholly owned subsidiary of Chrysler Group LLC, and was previously an indirect wholly owned subsidiary of Chrysler LLC, formerly DaimlerChrysler Company LLC, formerly DaimlerChrysler Corporation, formerly Chrysler Corporation.  (Doc. #40-1, ¶4.)  For ease of reference, the Court will refer to this group collectively as "Chrysler United States".

responsibility for shipping, advertising, or selling any of the assembled vehicles and had no role in implementing recalls on the subject vehicle or any vehicle in the United States market. Chrysler Canada did not distribute or sell the 1999 Chrysler 300M vehicle in the United States, and United States dealerships do not order vehicles from defendant or pay defendant for vehicles. Other than incentive trips in Florida, Chrysler Canada has never "transacted business in Florida; made contracts with the state of Florida; owned any real estate situated in Florida; maintained any offices, manufacturing plants or equipment in Florida; had any directors, officers, employees or agents based in Florida; had a bank account in Florida; or directed any advertising or marketing efforts to residents or businesses in Florida." (See generally Doc. #40-1.)

In response, plaintiffs assert that "[t]he factual evidence elicited from Chrysler Canada in the previous Florida case, Hunter v. Chrysler Canada, Inc., 6:09-cv-01050-MSS-GJK (M.D. Fla. 2009) overwhelmingly demonstrates Chrysler Canada was and is involved in 'substantial and not isolated activity' within Florida".[3] (Doc. #45, p. 8.) No other factual or legal argument is made with respect to the assertion of general jurisdiction.

---

[3]A copy of the Order is attached to the response. (See Doc. #45-1.)

In _Hunter_, the Court determined that personal jurisdiction was proper under the Florida Long-Arm statute under Fla. Stat. § 48.193(1)(b), a specific jurisdiction provision, rather than Fla. Stat. § 48.193(2), the general jurisdiction provision.  The Court finds that the facts elicited in _Hunter_ are insufficient evidence of substantial and not isolated activity in the State of Florida by defendant.  The fact that a vehicle manufactured by defendant in Canada found its way in the stream of commerce to Florida is not sufficient to give Florida general jurisdiction over defendant. _Goodyear Dunlap Tires Operations, S.A. v. Brown_, 131 S. Ct. 2846, 2851 (2011); _J. McIntyre Machinery, Ltd. v. Nicastro_, 131 S. Ct. 2780 (2011).  Plaintiffs have provided no factual basis for concluding that Chrysler Canada is engaged in substantial and not isolated activity in the state of Florida, and therefore personal jurisdiction pursuant to Fla. Stat. § 48.193(2) has not been established.

### (2)  Specific Jurisdiction

The Second Amended Complaint asserts personal jurisdiction based upon defendant (a) operating, conducting, engaging in, and carrying on a business or business venture in Florida, (b) committing a tortious act in Florida, and (c) causing injury to persons or property within Florida arising out of an act or omission outside Florida.  Plaintiffs thus assert that the Court has specific personal jurisdiction pursuant to Fla. Stat. §§

48.193(1)(a), (b), and (f)(2).  Specific jurisdiction refers to "jurisdiction over causes of action that arise from or are related to the party's actions within the forum."  PVC Windoors, 598 F.3d at 808.  Florida law requires, however, that "before a court addresses the question of whether specific jurisdiction exists under the long-arm statute, the court must determine whether the allegations of the complaint state a cause of action."  PVC Windoors, 598 F.3d at 808 (citations and internal quotation marks omitted.

### (a)   Sufficiency of the Allegations

The parties dispute whether the Florida choice-of-law principles direct that Florida, Ohio, or Canada law applies as to the statute of limitations in this matter.  No party asserts, however, that Florida law does not provide the substantive law for Counts I and II or that the allegations are insufficient to state a claim.

Count I of the Second Amended Complaint sets forth a claim of negligence.  Count I alleges that Chrysler Canada owed a duty of reasonable care to plaintiffs (Doc. #37, ¶35), breached its duties to plaintiffs in four specific ways (Id. at ¶36), and as a direct and proximate result plaintiffs suffered injuries and damages (Id. at ¶¶37-40).  Count I thus plausibly states all the elements of a negligence claim under Florida law. Clay Elec. Co-op, Inc. v. Johnson, 873 So. 3d 1182, 1185 (Fla. 2003).

Count II of the Second Amended Complaint sets forth a claim of strict liability.  Count II alleges that Chrysler Canada designed and/or manufactured and assembled the 1999 Chrysler 300 M and distributed and sold similar vehicles in Florida, (id. at ¶42), that it knew the vehicles would be operated by persons without inspection for defects in the rear seat back, rear seat cushion, and luggage compartment (id. at ¶43), that defendant knew or should have known that the vehicles would be sold and rented without substantial change in the condition from the time of manufacture and assembly to the time of sale (id. at ¶44), that the vehicle involved in the accident was defective and unreasonably dangerous in four specific ways (id. at ¶45), and that as a direct and proximate result plaintiffs suffered injuries and damages (id. at ¶¶46-49.)  Count II thus plausibly states a claim under Florida law.  See Barrow v. Bristol-Myers Squibb, 1998 WL 812318 at *27 (M.D. Fla. Oct. 29, 1998); see also Cassisi v. Maytag Co., 396 So. 2d 1140, 1143 (Fla. 1st DCA 1981).

Because plaintiffs have set forth plausible causes of action, it is appropriate to determine whether the Florida Long-Arm Statute affords personal jurisdiction over defendant.

**(b)  Application of the Long-Arm Statute**

Plaintiffs allege that personal jurisdiction over Chrysler Canada is appropriate under three (3) provisions of the Florida Long-Arm Statute.  Specifically, plaintiffs assert that Fla. Stat.

48.193 sections (1)(a), (1)(b), and (f)(2), all confer personal jurisdiction over defendant.

The Court finds that plaintiffs have sufficiently pled personal jurisdiction under section (1)(f)(2) of the Florida Long Arm Statute which provides personal jurisdiction over any person "[c]ausing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury . . . [p]roducts, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use." Fla. Stat. § 48.193(f)(2) (emphasis added). The parties dispute whether Chrysler Canada is a "manufacturer." Neither party disputes, however, that Chrysler Canada "assembled" the vehicle.

Florida courts have held that the term "processed" as contained in section 48.193(1)(f)(2) contemplates "'[t]he conduct of a wholesaler in bringing together large quantities of goods for shipment . . . .'" Pratte v. Wuebbels, 2008 WL 423409 (M.D. Fla. Feb. 13, 2008) citing Blumberg v. Steve Weiss & Co., Inc., 922 So. 3d 361, 364 (Fla. 3rd DCA 2006). Florida courts have determined that "'[t]he statute's use of the term 'serviced' connotes some hands-on contact with the product before it comes into the possession of the ultimate consumer.'" Id. Plaintiffs allegations, and defendant's concession that it was an "assembler"

of the subject vehicle demonstrates that defendant "serviced" the vehicle as the term has been interpreted, thereby coming within the scope of this provision of the Florida Long-Arm statute. Consequently, section 48.193(1)(f)(2) provides personal jurisdiction over defendant under the Florida Long-Arm statute.[4]

## B.  Constitutional Considerations

The second part of the jurisdictional analysis is whether the exercise of personal jurisdiction would violate Due Process.  In order for jurisdiction to comport with the Due Process clause, there must be a "purposeful availment of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino, 447 F.3d 1357, 1363 (11th Cir. 2006)(quotation marks omitted).  As long as there is a "substantial connection", even a single act can be sufficient to support jurisdiction depending on the nature and quality of the contact. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 n.18 (1985). Physical presence of the defendant in the forum State is not required, id. at 476, and jurisdiction may be found if defendant's "conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

---

[4]Because the Court finds personal jurisdiction is proper under subsection (1)(f)(2), the Court need not address the parties arguments with respect to subsections (1)(a) and (b).

### (a)   Minimum Contacts

Minimum contacts requires the following: (1) the contacts must be related to the plaintiff's cause of action or have given rise to it; (2) the contacts must involve some purposeful availment of the privilege of conducting activities within the forum, thereby invoking the benefits and protections of its laws; and (3) the defendant's contacts with the forum state must be such that it should reasonably anticipate being hailed into court there. Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 631 (11th Cir. 1996).

The parties contest whether or not defendant has had sufficient "minimum contacts" with Florida such that it should be subjected to personal jurisdiction by this Court.  Plaintiffs rely on the "stream of commerce" theory of personal jurisdiction, which provides simply that Due Process is satisfied if the forum state "asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." Vermeulen v. Renault, U.S.A., Inc., 985 F.2d 1534, 1546 (11th Cir. 1993), citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 29798 (1980).

Defendant, on the other hand, asserts that the recent Supreme Court case of J. McIntyre Machinery, Ltd. v. Nicastro, 131 S. Ct. 2780 (2011) dictates that the "stream of commerce plus" analysis is applicable.  Prior to J. McIntyre, the Eleventh Circuit had

-14-

applied, but had never explicitly adopted this test, which arose from Justice O'Connor's plurality opinion in <u>Asahi Metal Indus. Co., Ltd. v. Superior Court of California</u>, 480 U.S. 102, 110 (1987).  Under this test, a defendant must both place a product in the stream of commerce that ends up in the forum state, and do "something more" to "purposely avail itself of the market in the forum State." <u>Vermeulen</u>, 985 F.2d at 1547 (citing <u>Asahi</u>, 480 U.S. at 110).

Relevant Eleventh Circuit case law is unclear which test it would adopt under this set of facts, and the Eleventh Circuit has not yet had the opportunity to review <u>J. McIntyre</u>.  See <u>Vermeulen</u>, 985 F.2d at 1546 (applying "stream of commerce plus" test, but not explicitly adopting it); <u>Morris v. SSE, Inc.</u>, 843 F.2d 489, 493 n. 5 (11th Cir. 1988)(applying O'Connor's <u>Asahi</u> test and noting that satisfaction fo the narrower test articulated by Justice O'Connor satisfied other broader tests articulated in <u>Asahi</u>); <u>but see</u> <u>Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc.</u>, 207 F.3d 1351, 1357-58 (11th Cir. 2000)(applying "stream of commerce" test and <u>Calder</u> effects test[5]).

_____

[5]The effects test applies in order to determine whether sufficient minimum contact exist in torts cases.  <u>Oldfield</u>, 558 F.3d at 1220 n. 28 (citing <u>Calder v. Jones</u>, 465 U.S. 783 (1984)).  Under this test, it must be shown that the defendant (1) committed an intentional tort (2) that was directly aimed at the forum, and (3) causing an injury within the forum that the defendant should have reasonably anticipated." <u>Id.</u> at 1221 (citing <u>Calder</u>, 465 U.S. at 789-90); <u>see also</u>, <u>Smith</u>, 728 F. Supp. 2d at 1323.  As no

(continued...)

Defendant asserts that J. McIntyre dictates that the "stream of commerce plus" test is the applicable test in this matter. However, most district courts which have analyzed the issue disagree. See, e.g., Simmons v. Big No. 1 Motor Sports, Inc., -- F. Supp. 2d ----, 2012 WL 5426281 (N.D. Ala. Nov. 5, 2012); Askue v. Aurora Corp. of Am., 2012 WL 843939, *6-7 (N.D. Ga. 2010); Ainsworth v. Cargotec USA, Inc., 2011 WL 6291812 *2 (S.D. Miss. 2011). J. McIntyre was a fragmented decision and no opinion enjoyed the assent of five Justices. Therefore, courts have considered Justice Breyer's concurring opinion as the holding because he concurred in the judgment on only the narrowest of grounds. See Marks v. United States, 430 U.S. 188, 193 (1977)("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds . . .'"); United States v. Robinson, 505 F.3d 1208, 1221 (11th Cir. 2007)(quoting Marks, 430 U.S. at 193 (same))).

Accordingly, the "stream of commerce" test remains good law in the Eleventh Circuit, and J. McIntyre does not, as defendant suggests, alter this. Applying the facts of this case to that theory, the Court finds that Chrysler Canada purposely availed

---

[5](...continued)
intentional torts have been alleged, the effects test is not applicable.

itself of the protections of the State of Florida.  Chrysler Canada assembled the subject Chrysler 300 M for Chrysler United States, which distributes nationally in the United States, and therefore Chrysler Canada invoked the benefits and protections of those states, including Florida.  World-Wide Volkswagen Corp., 444 U.S. at 297.  Therefore, "it is not unreasonable to subject [defendant] to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others."  Id.

### (b)  Traditional Notions of Fair Play and Substantial Justice

Defendant asserts that exercising personal jurisdiction over it would offend traditional notions of fair play and substantial justice because it will be heavily burdened if it must defend the suit in Florida.  In particular, "almost all non-accident related witnesses and discovery that may be relevant to the Plaintiff's [sic] claims against Chrysler Canada are located in states and countries other than Florida and in the United States." (Doc. #40, pp. 20-21.)  Defendant also asserts that Florida has little interest in adjudicating the case within the State.

In response, plaintiffs assert that the United States and Florida have a compelling interest in protecting individuals within their boundaries from unsafe products.  Plaintiffs further assert that many crucial witnesses, including investigating police officers, EMS personnel, health care providers, and records

custodians are within the State of Florida.  Further, the vehicle
is preserved in its post-crash condition in Fort Myers, Florida.
Finally plaintiffs assert that "[t]his accident occurred in Florida
on Florida highways, and exercising jurisdiction will serve to
impose the safety of Chrysler Canada's products used by Floridians
and deter the influx of defective and dangerous products entering
its forum."  (Doc. #45, p. 16.)

There are five factors a Court must consider to determine if
exercising personal jurisdiction would comport with traditional
notions of fair play and substantial justice.  The factors include:

> (1) The burden on the defendant; (2) the forum's interest
> in adjudicating the dispute; (3) the plaintiff's interest
> in obtaining convenient and effective relief; (4) the
> interstate judicial system's interest in obtaining the
> most efficient resolution of controversies; and (5) the
> shared interest of the states in furthering fundamental
> substantive social policies.

Croft, 2010 WL 1707426, at *7 (citing Burger King, 471 U.S. at
477).

Here, it would likely burden defendant, at least to some
extent, to litigate in Florida.  The Court is not persuaded,
however, that Florida does not have a strong interest in the
adjudication of the dispute.  Accepting the allegations of the
Complaint as true, defendant's product was unreasonably dangerous
and several of these vehicles were involved in thousands of
accidents every year in Florida.  (Doc. #37, ¶¶21, 22.)  Certainly
Florida has a substantial interest in protecting drivers within the

State, regardless of citizenship, from unreasonably dangerous vehicles. The Plaintiffs have an interest in convenient relief in Florida because several of their key witnesses are within the State. See Foreign Imported Prods, 2004 WL 4724495 at *11; Sculptchair, 94 F.3d at 632. As to efficient resolution of the controversy, this would likely be available in both Florida and Canada as some evidence and witnesses are available in both of these jurisdictions. As to the final factor, both jurisdictions have an interest in furthering fundamental substantive social policies.

To be sure, the results of this balancing test are not overwhelming. On balance of the factors, however, the Court finds they indicate that subjecting Chrysler Canada to suit in Florida comports with traditional notions of fair play and substantial justice. See Sculptchair, 94 F.3d at 632 ("When minimum contacts have been established, often the interests of the plaintiff and the forum . . . will justify even the serious burdens placed on the alien defendant")(citing Asahi, 480 U.S. at 114). While there will undoubtably be a burden on defendant to a degree, this burden is not unreasonable or unmanageable based on the facts and circumstances. Accordingly, the motion to dismiss for lack of personal jurisdiction is denied.

### C.  Statute of Limitations

The parties agree that Ohio and Canada both have a two-year applicable statute of limitations and Florida has a four-year statute of limitations.  Defendant asserts that each statute of limitations began to run on the date of the accident, January 2, 2009.  Defendant asserts that either Canada or Ohio law applies under Florida conflict of laws principals and therefore, plaintiffs' action is time-barred.  Accordingly, the Amended Complaint should be dismissed.

In response, plaintiffs assert that there is a "false" conflict among the jurisdictions because under all three, this matter is entitled to equitable tolling.  In particular, plaintiffs assert that defendant fraudulently identified Chrysler United States, rather than Chrysler Canada, as the manufacturer of the Chrysler 300 M.  Plaintiffs assert that it was not until December 2011, that they discovered that defendant was the "true" manufacturer of the vehicles.  Therefore, plaintiffs' claims are entitled to equitable tolling.

In reply, defendant does not dispute that Chrysler United States was identified as the manufacturer.  Defendant asserts that Chrysler Canada is not the "manufacturer" and instead is the "assembler" of the vehicles and that Chrysler United States was correctly identified as the manufacturer.  Therefore, plaintiffs are not entitled to equitable tolling.

A comprehensive conflict-of-law analysis is required only if the case involves a "true" conflict between the jurisdictions with an interest in the case.  "A true conflict exists when 'two or more states have a legitimate interest in a particular set of facts in litigation and the laws of those states differ or would produce a different result.'"  Id. at 1219 quoting Walker v. Paradise Grand Hotel, Ltd., No. 01-3564, 2003 WL 21361662, *2-3 (S.D. Fla. Apr. 25, 2003)).  On the other hand, a "false conflict" exists where the laws of the interested jurisdictions are: (1) the same; (2) different but would produce the same outcome under the facts of the case; or (3) when the policies of one jurisdiction would be furthered by the application of its laws while the policies of the other jurisdiction would not be advanced by the application of its laws.  Tune v. Philip Morris Inc., 766 So.3d 350, 352 (Fla 2d DCA 2000.

The statute of limitations is an affirmative defense, and the burden of proving an affirmative defense is on the defendant. Tello v. Dean Witter Reynolds, Inc., 410 F.3d 1275, 1292 (11th Cir. 2005).  A plaintiff is not required to anticipate and negate an affirmative defense in the complaint.  LaGrasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004).  A Rule 12(b)(6) motion to dismiss on statute of limitations grounds may be granted, however, if it is apparent from the face of the complaint that the claim is time-barred.  LaGrasta, 358 F.3d at 845-46.  Nonetheless,

a motion to dismiss on statute of limitations grounds should not be granted where resolution depends either on facts not yet in evidence or on construing factual ambiguities in the complaint in defendant's favor.  Omar ex rel. Cannon v. Lindsey, 334 F.3d 1246, 1252 (11th Cir. 2003).

The Amended Complaint alleges that "[t]he subject vehicle as manufactured by Chrysler Canada, and assembled by employees of Chrysler Canada . . ."  (Doc. #37, ¶9)(emphasis added).  For purposes of a motion to dismiss, the Court must accept the allegation that Chrysler Canada, rather than Chrysler United States, was the manufacturer.  As defendant has conceded, Chrysler United States was initially identified as the manufacturer.  As a result, plaintiffs have at least established a plausible basis for invoking equitable tolling.  Whether or not plaintiffs are entitled to equitable tolling requires resolution of facts not yet in evidence.  Omar, 334 F.3d at 1252.  Therefore, at this stage in the litigation, no "true" conflict has been established and plaintiffs' Amended Complaint cannot be dismissed as untimely on its face.  The motion to dismiss on this basis is denied.

Accordingly, it is now

**ORDERED**:

Chrysler Canada, Inc.'s Motion to Dismiss Plaintiff's Second Amended Complaint for Lack of Personal Jurisdiction and as Falling

Outside the Statute of Limitations and Incorporated Memorandum of Law (Doc. #40) is **DENIED**.

   **DONE AND ORDERED** at Fort Myers, Florida, this __30th__ day of March, 2013.


JOHN E. STEELE
United States District Judge


Copies:
Counsel of record